IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARCUS CLARK,                         :      CIVIL ACTION
                                      :      NO. 14-806
          Petitioner,                 :
                                      :
     v.                               :
                                      :
JOHN KERESTES et al.,                 :
                                      :
          Respondents.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           February 11, 2015

          Petitioner Marcus Clark ("Clark" or "Petitioner"), a

prisoner at the State Correctional Institution in Frackville,

Pennsylvania, filed a pro se application for a writ of habeas

corpus under 28 U.S.C. § 2254. Petitioner claims that cumulative

trial court error denied him a fair trial, that there was

insufficient evidence to convict him of first-degree murder, and

that trial counsel was ineffective. Magistrate Judge Jacob P.

Hart recommended denial of the petition and Petitioner objected

to the Report and Recommendation. For the reasons set forth

below, the Court will adopt Magistrate Judge Hart's Report and

Recommendation and deny the Petitioner habeas relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

On September 10, 2007, a jury in the Court of Common Pleas for Philadelphia County convicted Marcus Clark of first-degree murder and numerous firearms violations. Report and Recommendation ("R&R") 1. He was subsequently sentenced to life in prison. Id. According to the facts established at trial, on December 22, 2005, Clark and victim Jamar Smith entered into an argument, during which Clark retrieved a gun and fatally shot Smith five times in the back. Id.

On direct appeal to the Superior Court of Pennsylvania, Clark argued the following: (1) the trial court erred in denying his motion to suppress an inculpatory statement he made to a police offer as he was being transported to the police station for questioning; (2) the trial court erred in allowing evidence of bad acts or other crimes; (3) the trial court erred in denying his request for a jury instruction on third-degree murder; (4) the evidence was insufficient to establish the elements of first-degree murder; and (5) the verdict was against the weight of the evidence. Id. at 2. The Superior Court denied Clark's appeal on June 2, 2009, and the Pennsylvania Supreme Court denied his petition for allocatur on February 25, 2010. Id.

On March 12, 2010, Clark filed a timely petition for collateral relief under the Pennsylvania Post-Conviction Relief

Act ("PCRA"), in which he claimed the following: (1) ineffective assistance of trial counsel for failing to call Latasha Foster as a witness; (2) ineffective assistance of trial counsel for failing to call Clark's brother Malcolm Clark as an alibi witness; (3) ineffective assistance of trial counsel for failing to object to witness Sharon Burton's statement that "they killed my son," which potentially suggested that Clark also killed Burton's son; and (4) Foster's testimony constituted after-discovered evidence that should have resulted in a new trial.[1] Id. On June 5, 2012, the PCRA court denied Clark's petition. Id. On June 24, 2013, the Superior Court denied his PCRA appeal, and on January 15, 2014, the Pennsylvania Supreme Court declined to review the matter. Id. at 3.

On February 6, 2014, Clark filed his federal habeas petition. ECF No. 1. In it, he first asserts that cumulative trial court error denied him a fair trial. Pet. 6. Specifically, he claims that the trial court improperly denied his motion to suppress the inculpatory statement he made to the police, improperly permitted witness Burton to testify about Clark's prior drug-dealing acts, and failed to instruct the jury on third-degree murder. Id. Second, Clark asserts that the evidence established at trial is insufficient to support a first-degree

---

[1]       Petitioner did not renew this fourth claim in his federal habeas petition.

murder conviction. Id. at 7. Finally, Clark asserts ineffective assistance of trial counsel on three separate bases: (1) failing to call Clark's brother Malcolm Clark as an alibi witness; (2) failing to call Latasha Foster as a witness; and (3) failing to object to witness Burton's allegedly prejudicial statement. Id. at 9.

On June 13, 2014, the Commonwealth filed its response to Clark's petition, wherein it argued for denial of all habeas relief. ECF No. 10. Magistrate Judge Hart completed his R&R on July 10, 2014 (ECF No. 11), to which Clark objected on July 28, 2014 (ECF No. 14).[2] Clark's petition is now ripe for disposition.

## II.   LEGAL STANDARD

The Court may refer an application for a writ of habeas corpus to a United States Magistrate Judge for a report and recommendation. See 28 U.S.C. § 2254 Rule 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."). A prisoner may object to the magistrate judge's report and recommendation within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1(IV)(b). The Court must

---

[2]     On July 11, 2014, in response to the Commonwealth's filing, Clark submitted a "traverse." ECF No. 12. Although Clark filed the traverse after the R&R was completed, the Court notes that his arguments therein are nearly identical to those in his objection to the R&R, which the Court considers below.

then "make a de novo determination of those portions of the
report or specified proposed findings or recommendations to
which objection is made." § 636(b)(1). The Court does not review
general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d
Cir. 2011) ("We have provided that § 636(b)(1) requires district
courts to review such objections de novo unless the objection is
not timely or not specific." (internal quotation marks
omitted)). The Court "may accept, reject, or modify, in whole or
in part, the findings or recommendations made by the magistrate
judge." § 636(b)(1). Therefore, the Court will conduct a de novo
review of those portions of the R&R to which Petitioner objects.

On habeas review, the Court must determine whether the
state court's adjudication of the claims raised was (1) contrary
to, or an unreasonable application of, clearly established
federal law, or (2) based on an unreasonable determination of
the facts in light of the evidence presented. See 28 U.S.C.
§ 2254(d).

Before obtaining federal habeas review of whether his
state confinement violates federal law, a state prisoner must
first exhaust all remedies available in the state courts. See
§ 2254(b)(1)(A). If a habeas petitioner has a state law right to
raise, by available procedure, the question presented in his
habeas petition, then he has failed to exhaust all available
state remedies. See § 2254(c). Exhaustion in state court means

that the petitioner has "properly presented his claims through
one complete round of the State's established appellate review
process." Woodford v. Ngo, 548 U.S. 81, 92 (2006) (internal
quotation marks omitted); see also Picard v. Connor, 404 U.S.
270, 275 (1971). Further, the petitioner bears the burden of
showing that his federal claim was "fairly presented" in state
court, and that the facts, as well as the argument underlying
that claim, are "substantial[ly] equivalent" to what the
petitioner presented in state court. Santana v. Fenton, 685 F.2d
71, 73-74 (3d Cir. 1982).

　　　"[I]f [a] petitioner failed to exhaust state remedies
and the court to which the petitioner would be required to
present his claims in order to meet the exhaustion requirement
would now find the claims procedurally barred[,] . . . there is
a procedural default for purposes of federal habeas . . . ."
Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); see also Gray
v. Netherland, 518 U.S. 152, 161-62 (1996). The state procedural
bar that precludes a petitioner from exhausting his state law
remedies and thus prevents federal habeas corpus review must be
an "independent and adequate state-law ground." Gray, 518 U.S.
at 162 (citing Teague v. Lane, 489 U.S. 288, 298 (1989)). Where
a habeas petitioner has procedurally defaulted on a claim in
this way, he may not seek federal habeas corpus review of the
defaulted claim "unless [he] can demonstrate cause and prejudice

for the default." Id.; see also Coleman, 501 U.S. at 750

(stating that in all cases of procedural default, in order to

obtain federal habeas review, a state petitioner must either

"demonstrate cause for the default and actual prejudice as a

result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental

miscarriage of justice").

**III. DISCUSSION**

Magistrate Judge Hart recommends that Petitioner's

habeas claims be denied without an evidentiary hearing and that

the Court find there is no probable cause to issue a certificate

of appealability. Petitioner has filed specific objections to

Judge Hart's R&R as to each of his three habeas claims, which

the Court will now review de novo.

A.    Ground 1: Cumulative Trial Errors

Petitioner alleges his "conviction resulted from state

court errors [which, ]taken together[,] denied him a fair

trial." Pet. 6. He alleges the following three errors: (1) the

trial court denied his motion to suppress an inculpatory

statement he made to a police officer without first receiving a

Miranda warning; (2) the trial court allowed Commonwealth

witness Sharon Burton to testify that she was acquainted with

Petitioner because she had purchased drugs from him; and (3) the

trial court failed to provide the jury with a third-degree

murder instruction. Id.

Petitioner's reference to "taken together" suggests a

claim for cumulative error, which is a "cognizable habeas claim"

and a "standalone constitutional claim" that "must have been

exhausted" at the state level before it may be considered on

habeas review. R&R 4 (internal quotation marks omitted) (citing

Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008); and Collins v.

Sec'y of Pa. Dep't of Corrections, 742 F.3d 528, 542-43 (3d Cir.

2004)); see also 28 U.S.C. § 2254(b)(1)(A). Petitioner raised no

cumulative error claim on direct review or in his PCRA petition.

Because Petitioner is out of time to raise this claim in an

additional PCRA petition,[3] and demonstrates no cause or prejudice

for the default, see Gray, 518 U.S. at 162, the claim has

_____

[3]        Per Magistrate Judge Hart,

>     [u]nder Pennsylvania law, a PCRA petition must be
>     filed within one year after the petitioner's judgment
>     became final. 42 Pa. CSA § 9545(b). Clark's judgment
>     became final on or about May 25, 2010, ninety days
>     after the Pennsylvania Supreme Court denied allocatur,
>     at the expiration of the time within which he could
>     have sought relief from the United States Supreme
>     Court. Thus, the last date for Clark to have raised
>     this claim in a PCRA petition would have been May 25,
>     2011.

R&R 5.

procedurally defaulted. <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1.

Accordingly, Petitioner's first ground for habeas relief fails.[4]

B.  <u>Ground 2: Insufficient Evidence</u>

Petitioner claims the Commonwealth established
insufficient evidence to convict him on a first-degree murder
charge:

> The evidence presented established that at the time of
> the shooting, the victim had Brian Young by the neck
> using him as a human shield, with the victim acting as
> if he had a gun in his hand, consistent with the
> shooter not intending to kill victim but protect [sic]
> himself from the victim shooting Young or the shooter
> and does not support an inference of a specific intent
> to kill.

---

[4]     To the extent Petitioner is arguing that each of the
errors he alleges--all of which he raised at the state level--
implicates on its own terms a due process violation cognizable
on habeas review, Objection 3-4 (citing <u>Gilmore v. Taylor</u>, 508
U.S. 333, 348-49 (1993) (O'Connor, J., concurring)), the Court
still finds that no habeas relief is available. Regarding the
suppression motion, the Petitioner has not shown by clear and
convincing evidence that the trial court unreasonably found that
(1) Petitioner was not being interrogated at the time he made
his inculpatory statement or (2) the officer's testimony should
be credited. <u>See</u> 28 U.S.C. § 2254(d); <u>Miller-El v. Cockrell</u>, 537
U.S. 322, 340 (2003). Regarding the testimony of Petitioner's
prior drug dealing, the Petitioner has not shown that the trial
court was unreasonable when it found that the testimony's
probative value with respect to motive outweighed any
prejudicial effect on Petitioner. <u>See</u> § 2254(d). Finally,
regarding the jury instruction on third-degree murder,
Petitioner fails to point to any evidence that would contradict,
much less render unreasonable, the trial court's decision not to
allow the instruction. <u>See</u> <u>id.</u>

Pet. 7. Petitioner argues that "the court cannot rely on the presumption that the specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the body." Objection 6. He presents an alternate scenario:

> While the decedent was shot numerous times in the back, it is equally consistent that from the location of the distance [sic] gunshot wounds and the witnesses' testimony that the gunfire occurred rapidly without a break, that the shooting sought only to scare or wound the decedent and stop the decedent's pursuit of the petitioner, while decedent was using another person as a human shield to protect himself.

Id. Petitioner faults the state courts for "conduct[ing] no analysis at all as to whether any of the facts or inferences demonstrate petitioner's specific intent," for "not address[ing] the required specific intent element," for not "identif[ying] facts that [the state courts] attributed to petitioner's intent," and for basing their decisions "upon unreasonable speculation and suspicion," all in violation of 28 U.S.C. § 2254(d). Objection 7.

In bringing a claim of insufficiency of the evidence, Petitioner "bears a 'very heavy burden.'" United States v. Ozcelik, 527 F.3d 88, 93 (3d Cir. 2008) (quoting United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1988)). Applying a standard deferential to the jury's verdict, the Court "view[s] the evidence in the light most favorable to the government, . . . [and] will sustain a defendant's conviction if 'any rational

10

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)).

As Magistrate Judge Hart notes, the Superior Court on direct review pointed to the following evidence in support of the first-degree murder conviction:

> The record established that multiple witnesses observed [Petitioner] pursue the unarmed victim down the street and shoot him five times in the back as the victim tried to use Brian Young as a "human shield" to protect himself. See N.T. Jury Trial, 9/5/07, at 80-81, 167-171, 216-220, 226-227; N.T. Jury Trial, 9/6/07, at 11-16. Contrary to [Petitioner's] claim, there is no evidence whatsoever that the victim possessed a gun, pursued or threat[en]ed [Petitioner] in any way.

R&R 7 (quoting Commonwealth v. Clark, No. 428 EDA 2008, slip op. at 7 (Pa. Super. Ct. June 2, 2009)). Furthermore, "an Assistant Medical Examiner for Philadelphia County testified that two of the gunshots hit [the victim's] spinal cord and two of them pierced his lungs, resulting in his death." Id. (citing Clark, No. 428 EDA 2008, slip op. at 8).[5]

The above evidence is sufficient to allow a rational trier of fact to find that Petitioner possessed the specific intent required to convict him of first-degree murder. Ozcelik, 527 F.3d at 93. This is particularly true given that, in

---

[5]     As Judge Hart notes, although the Superior Court cites to the medical examiner's testimony, it is not included in the state court record that this Court received. R&R 7.

Pennsylvania, "[s]pecific intent can be inferred where a deadly weapon is used upon a vital part of the body." Commonwealth v. Smith, 861 A.2d 892, 895 (Pa. 2004). Petitioner's argument to the contrary assumes that the evidence he recites is sufficient to support an inference that he acted in self-defense, and that this inference is just as valid as the inference the jury made against him.[6] However, he does not point to any evidence beyond his bare recital that the victim acted as if he had a gun in his hand. Against this are multiple witness testimonies that he pursued the unarmed victim down the street and shot him five times in the back. In making the inference that Petitioner had the specific intent to murder the victim, the jury (and the Superior Court on review) certainly did not base its conclusion "on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner's second ground for habeas relief fails.

---

[6]      Likewise, the cases Petitioner relies on discuss situations where "two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances." Commonwealth v. Hubbard, 372 A.2d 687, 692 (Pa. 1977) (quoting Commonwealth v. Woong Knee New, 47 A.2d 450, 468 (Pa. 1946)) (internal quotation marks omitted). Such is not true here, and Petitioner's cases are therefore not relevant. See Objection 7 (citing Commonwealth v. Tribble, 467 A.2d 1130 (Pa. 1983); Hubbard, 372 A.2d 687; Woong Knee New, 47 A.2d 450; and Commonwealth v. Giovanetti, 19 A.2d 119 (Pa. 1941)).

C.    Ground 3: Ineffective Assistance of Trial Counsel

The Supreme Court laid out the framework for evaluating constitutionally ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668 (1984). In order to bring a successful claim under Strickland, a petitioner must establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687.

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The court's "scrutiny of counsel's performance must be highly deferential." Id. at 689. Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690. Next, the Court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a petitioner must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The [petitioner] must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court evaluates Petitioner's ineffective assistance claims according to these principles.

1.    Failure to Call Alibi Witness

Petitioner contends trial counsel was ineffective for failing to call as a witness his brother, Malcolm Clark, "who provided a full and complete alibi." Pet. 9. However, as Magistrate Judge Hart notes:

> The Pennsylvania Superior Court rejected this claim in its decision on [Petitioner's] PCRA Appeal, briefly explaining that "[Petitioner's] trial counsel . . . conducted an on-the-record colloquy on the first day of trial, at which [Petitioner] waived his right to present alibi witnesses and indicated that he wished to withdraw his alibi notice."

R&R 8 (ellipsis in original) (quoting Commonwealth v. Clark, No. 2219 EDA 2012, slip op. at 3 (Pa. Super. Ct. June 24, 2013)). Judge Hart quotes in full the "extensive colloquy" that trial counsel and the court held on the record with Petitioner, concluding that "[u]nder these circumstances, the Superior Court's decision that trial counsel had not been ineffective in failing to present alibi witnesses was inevitable." Id. at 10. This Court agrees, noting the record reflects that Petitioner clearly waived his right to call alibi witnesses and that the

14

trial court asked pointed questions in order to satisfy itself
that Petitioner understood the consequences of his waiver.
Accordingly, "there is no basis upon which to disturb the
Superior Court's decision," id., and this ineffectiveness claim
fails.

>2.    Failure to Procure Testimony

Petitioner claims trial counsel was ineffective for
failing to call "Latasha Foster[,] a ready and available witness
who corroborated Petitioner's innocence." Pet. 9. Petitioner
attached a statement from Foster to his PCRA petition in which
she stated that "a light skinned black male" ran to the victim
and shot him five or six times. Am. PCRA Pet. Ex. A,
Commonwealth v. Clark, No. CP-51-CR-0901351-2006 (C.C.P. Phila.
June 5, 2012). Petitioner asserts that trial counsel failed to
procure this testimony, even though "counsel knew of the
witness's existence." Objection 9. He notes that since "Foster's
testimony would have demonstrated to the jury petitioner's
innocence and consistent [sic] with the defense's alibi
witnesses," he was thereby prejudiced by counsel's failure to
call her. Id.

The PCRA court denied Petitioner's ineffectiveness
claim on this ground because it noted Petitioner's Amended
Petition admitted that Foster "was unknown both to the defense

15

and to the prosecution," Clark, No. CP-51-CR-0901351-2006, slip

op. at 3 (quoting Am. PCRA Pet. Br. 10, Clark, No. CP-51-CR-

0901351-2006), and "[n]o mention of her is made in the trial

record." Id. Moreover, the PCRA court reasoned, Petitioner "has

failed to indicate how a more thorough investigation by trial

counsel would have led to her being identified." Id. Magistrate

Judge Hart affirms this approach, adding that, despite

Petitioner's assertion that Foster was "a ready and available

witness," "she appears to have become known to him only in 2011,

four years after his trial." R&R 11. Because Petitioner's habeas

petition (claiming that trial counsel knew of Foster at the

time) conflicts with his prior statements, and he has offered no

explanation or evidence with respect to Foster's availability at

the time of his trial, he has not met his burden of showing that

trial counsel was deficient. See Strickland, 466 U.S. at 687.

Even assuming arguendo that Petitioner's counsel was

deficient in failing to procure Foster as a witness, Petitioner

has not shown that such deficient performance prejudiced him. As

both the PCRA court and the Superior Court noted, Petitioner

offers nothing to prove that Foster's description of the shooter

as "a light skinned black male" was inconsistent with his own

appearance. See Clark, No. 2219 EDA 2012, slip op. at 4; Clark,

No. CP-51-CR-0901351-2006, slip op. at 4. Moreover, as the

Superior Court wrote, "The trial court noted that the affidavit

16

did not indicate that she knew [Petitioner], nor did it state

that [Petitioner] was not the shooter. Moreover, three

eyewitnesses identified Clark by name as the shooter." Clark,

No. 2219 EDA 2012, slip op. at 4. Having failed to meet his

burden under Strickland, Petitioner's ineffectiveness claim here

cannot succeed. See Strickland, 466 U.S. at 687.

### 3.    Failure to Object to Prejudicial Testimony

Finally, Petitioner claims his trial counsel was

ineffective for "fail[ing] to object to inflammatory, unfairly

prejudicial testimony when Sharon Burton testified 'they killed

my son.'" Pet. 9.

Petitioner's assertion flatly contradicts the trial

record. As Magistrate Judge Hart quotes in relevant part,

counsel objected immediately upon hearing Burton's statement,

and then requested a sidebar. R&R 12-13 (quoting Trial Tr. 230-

31, Sept. 5, 2007, Commonwealth v. Clark, No. CP-51-CR-0901351-

2006 (C.C.P. Phila. Sept. 10, 2007)). The trial court overruled

the objection and denied the sidebar request, and counsel later

moved for a mistrial based on Burton's statement, which the

court also denied. Id. at 13 (quoting Trial Tr. 276-78, Sept. 5,

2007, Clark, No. CP-51-CR-0901351-2006). Because the record

shows that trial counsel did object to Burton's testimony,

Petitioner has not met his burden of showing that trial counsel

17

was deficient. See Strickland, 466 U.S. at 687. Petitioner cannot prevail on his ineffectiveness claim here.[7]

. . . .

Upon review of each basis supporting Petitioner's ineffective assistance of counsel claim, the Court finds that Petitioner has not met his burden to show both deficient performance and prejudice. Strickland, 466 U.S. at 687. Accordingly, Petitioner's third ground for habeas relief fails.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a Certificate of Appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. The Court will not issue a Certificate of Appealability because Petitioner has not made a

---

[7]     To the extent that Petitioner also claims error by the trial court for not declaring a mistrial, see Objection 10 (noting that, although the court instructed the jury to disregard Burton's statement, "the damage had been done and petitioner had been prejudiced beyond repair"), he has not raised such a claim in his habeas petition and the Court will not consider it.

18

substantial showing of the denial of his constitutional rights.

See <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

**V.     CONCLUSION**

For the foregoing reasons, the Court will adopt

Magistrate Judge Hart's Report and Recommendation, overrule

Petitioner's objections thereto, and deny the petition for a

writ of habeas corpus without an evidentiary hearing. The Court

will not issue a Certificate of Appealability. An appropriate

order follows.